CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 29 2012

JULIA C. DUDLEY, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM BURTIS SAUNDERS,<br>　　Plaintiff, | ) ) ) | Civil Action No. 7:11cv00311 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| GERALD A. MCPEAK, *et al.*,<br>　　Defendants. | ) ) | By: Samuel G. Wilson<br>United States District Judge |

Plaintiff William Burtis Saunders, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming that the defendants, three employees at the New River Valley Regional Jail ("NRVRJ"), were deliberately indifferent to his serious medical need and denied him equal protection of the law. The defendants, NRVRJ Superintendent Gerald McPeak, NRVRJ supervisor Colonel Lawson, and NRVRJ head nurse Betty Akers, have moved for summary judgment with supporting affidavits, and Saunders has responded. The defendants—none of whom can diagnose or prescribe medical treatment, and all of whom must rely on the NRVRJ physician to exercise his medical judgment—contend that they did not know of Saunders' hepatitis C condition until recently, and that when they became aware of his condition they responded appropriately. The court agrees, finds that the uncontradicted evidence shows that the defendants were not deliberately indifferent to Saunders' medical needs, and grants the defendants' motion for summary judgment on that claim. The court further finds that Saunders has failed to allege facts in support of, and the court will therefore dismiss, Saunders' equal protection claim.

I.

The Virginia Department of Corrections ("VDOC") committed Saunders to NRVRJ on May 12, 2010. Upon booking, NRVRJ staff asked Saunders a series of medical-history

questions and recorded his answers in a two-page booking report. (Booking Observation Report 1, E.C.F. No. 26-1.) Among various other declarations about Saunders' medical history, the report indicated that Saunders did not have hepatitis. Saunders signed the report at the bottom, directly under the statement, "By my signature, I agree that the above is true and correct to the best of my knowledge."[1] (Id.)

Shortly after booking, Saunders began filing a series of medical requests. The non-exhaustive list includes requests for mental-health treatment for anxiety and trouble sleeping, a different soap to reduce itching, physician's treatment for anxiety and trouble sleeping, medical staff to weigh him, unspecified mental-health treatment (at least twice), hepatitis C treatment (at least four times), chest-pain treatment, tennis shoes to alleviate back and ankle pain (at least four times), a copy of his medical records, and a nighttime "snack bag." (Mot. Summ. J. Medical Requests 40–61, E.C.F. No 22-1.) Saunders directed one of these requests to Colonel Lawson (a non-medical employee) on February 2, 2010, asking for hepatitis C treatment and transfer to another correctional facility. As NRVRJ staff did with each of Saunders' requests, Lawson evaluated the request and responded to it. Lawson advised Saunders that NRVRJ had requested Saunders' medical records from his previous correctional institution and that Saunders should follow up with Dr. Moses about his medical complaint.

Despite Lawson's advice, Saunders did not follow up with Dr. Moses or the medical department until May 19, 2011, when he filed a medical grievance complaining that medical staff had not yet treated him for hepatitis. Nurse Akers' response to Saunders explained that she had checked his medical chart and booking form and found nothing about hepatitis. And Nurse Akers confirms in her affidavit that, prior to Saunders' May 19th grievance, she was not aware,

---

[1] Saunders contends that "[n]ot one of the Booking Officers took the time to set me down and ask me any of the questions on the list." (See Resp. Mot. Summ. J. 2, E.C.F. 26) Saunders admits, however, that he signed the booking report. (Id.)

2

and Saunders' medical record gave no indication, that Saunders had or ever complained of having hepatitis.[2]

Soon after, Saunders filed a complaint about not receiving treatment for an ankle injury. Unhappy with NRVRJ's initial response (which was to treat Saunders, after noting that he had not previously complained about the injury), Saunders appealed the response on June 1, 2011 and added a complaint about a lack of hepatitis treatment. Superintendent McPeak responded to Saunders ankle-injury complaint by noting that he had watched surveillance video of Saunders playing basketball for an hour without sitting down, taking a break, or limping (implying that he did not, in fact, have a bad ankle), and that medical staff treated Saunders as soon as he complained. McPeak further explained that he had spent thirty minutes reviewing Saunders' medical history and noted that Saunders had only recently complained about his hepatitis, that Saunders had made numerous requests for and subsequent refusals of medical treatment, and that Saunders should see the doctor and follow his orders. (Mot. Summ. J. Grievances 87, E.C.F. 22-2.). Two days later, Saunders directed a similar complaint at McPeak. McPeak responded the same day, indicating that Saunders was making it difficult for staff to treat him, but that Saunders should "[s]ee the doctor and let him know what is going on with you so we can provide treatment if it is necessary." On July 1, 2011, Saunders filed this action claiming deliberate indifference to his medical needs. Since that time, Dr. Moses and NRVRJ medical staff have repeatedly evaluated Saunders for hepatitis C symptoms and decided that he is not yet in need of treatment.[3]

---

[2] It appears that NRVRJ had in fact requested Saunders' VDOC medical records as of this date. For whatever reason, however, there was no record of the request in Saunders' medical file at that time. Nurse Akers speculates in her affidavit that she saw no record of the request because it was "in another bin for follow up." (Akers Aff. 2, E.C.F. No. 22-1.)

[3] On July 13, 2011, medical evaluated Saunders for hepatitis and noted that he had no symptoms or problems related to the disease. In the meantime, medical staff at NRVRJ had been sending repeated requests to VDOC for Saunders' medical records in order to follow up on Saunders' claim that he had a prior diagnosis of

## II.

Saunders alleges that the defendants were deliberately indifferent to his serious medical need. Specifically, Saunders claims that the defendants failed to provide him with adequate medical treatment for his hepatitis C because they did not regularly check his liver enzyme levels. In light of the defendants' sworn affidavits and the other uncontradicted evidence, the court finds that the defendants did not act with deliberate indifference and therefore grants the defendants' motion for summary judgment.[4]

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eight Amendment cruel-and-unusual-punishment claim, a prisoner must prove two things: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.' Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective component is satisfied by proving a serious medical condition. Id. The

---

hepatitis C. Because Saunders was not experiencing any signs or symptoms of problems related to hepatitis C, medical staff intended to schedule Saunders to see the doctor once his medical records arrived.
Saunders' VDOC medical records arrived at NRVRJ on August 19, 2011, after NRVRJ had sent a total of four requests for them. Medical staff scheduled Saunders to see Dr. Moses on August 30, 2011. At Saunders' appointment, Dr. Moses noted that Saunders had been diagnosed with hepatitis C at his prior institution, but had not yet needed treatment. After Saunders complained of feeling weak at his appointment, Dr. Moses conducted a physical exam and ordered a liver-function test that was done that day. Saunders soon complained again and met with Dr. Moses on September 23, 2011. Dr. Moses conducted a physical exam, noted that Saunders' abdomen was not tender and that he had no palpable liver enlargement, and ordered no treatment.

[4] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

subjective component is satisfied by showing a prison official's deliberate indifference. Id. Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. Id.; see also Farmer v. Brennan, 511 U.S. 835, 837 (1994). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). In this respect, the right to medical treatment is limited to that treatment that is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

There is no dispute that hepatitis C is a serious medical condition that satisfies the objective prong of an Eighth Amendment prima facie case. Saunders' case fails, however, because he has produced no evidence proving the subjective (deliberate indifference) prong. He has produced no evidence that the defendants subjectively knew about his hepatitis C and deliberately failed to treat it. The defendants, on the other hand, have offered affidavits and other supporting documents establishing essentially the opposite. The record shows that Saunders failed to inform NRVRJ staff of his condition for nearly a year before bringing it to the attention of Colonel Lawson, a non-medical officer. Lawson responded by ordering Saunders' medical records and telling him to see the doctor. Saunders did not follow that instruction, and instead waited another three months before filing a medical grievance. Nurse Akers then searched Saunders' medical charts and booking report for some indication that Saunders had hepatitis C, but found none. And when Saunders complained to Superintendent McPeak,

5

McPeak reviewed Saunders' medical records, informed Saunders that he had only recently alerted NRVRJ staff to his condition, and told Saunders to see the doctor for treatment. Only weeks after Saunders' complaint to McPeak, Saunders filed this lawsuit. Since that time, Dr. Moses has evaluated Saunders' condition and decided that treatment is currently unwarranted.

At most, Saunders' case demonstrates that the defendants were negligent in failing to procure and evaluate Saunders' medical records in a timely manner. Administrative delays, however, do not automatically translate into deliberate indifference. See Estelle, 429 U.S. at 106 (commenting that negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). General knowledge of facts creating a substantial risk of harm is not enough to establish deliberate indifference, and in the light *most* favorable to Saunders, that is all his filings establish. On the other hand, the defendants' affidavits and other exhibits establish that they knew of Saunders' condition only for short time, that when they learned of the condition they responded to the extent their medical training allowed, and that Saunders is presently under the care of a physician who has determined that Saunders is not in need of treatment. Accordingly, the court finds that—even drawing all justifiable inferences in favor of Saunders—there is no evidence on which a jury could reasonably find that the defendants were deliberately indifferent to Saunders' medical need. The court will therefore grant the defendants' motion for summary judgment.[5]

---

[5] Defendants also raise the defense of qualified immunity. The court finds that the defendants are entitled to qualified immunity as to Saunders' claim for damages. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Qualified immunity is an immunity from suit rather than a mere defense to liability. Thus, whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200–01 (2001) (modified by Pearson v. Callahan, 555 U.S. 223 (2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

## III.

Saunders alleges that the defendants have violated his right to equal protection. Specifically, Saunders states that officials at NRVRJ treat him, as a maximum security prisoner, differently from minimum security prisoners. Because Saunders has failed to plead the requisite facts in support of his claim, the court will dismiss it pursuant to 28 U.S.C. § 1915(e).[6]

Section 1915(e) of Title 28 mandates that in proceedings *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." In order to state a claim for a violation of the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from other similarly situated parties and that the disparate treatment was a product of purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)). Only once this showing is made should a court proceed to determine whether the disparate treatment can be justified under

---

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998). As explained above, the defendants' uncontradicted affidavits and other supporting documentation establishes that the defendants were not deliberately indifferent to Saunders' medical need. Accordingly, the court finds that the defendants are entitled to qualified immunity from Saunders' claim for damages.

Saunders' claims against Superintendent McPeak and Colonel Lawson, two non-medical supervisors, also fail because he has not demonstrated grounds for supervisory liability. A medical treatment claim cannot be brought against a supervisor absent an allegation that he was personally connected with the denial of the medical treatment. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). To demonstrate supervisory liability, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Saunders makes no such allegation regarding defendants McPeak and Lawson.

[6] Saunders concedes that he was in the process of grieving this claim at the time he filed his complaint; by his own admission, his claim is unexhausted.

7

the requisite level of scrutiny. Id. In addition, "to state a claim upon which relief may be granted, [a plaintiff] must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002).

Saunders has failed to meet that burden here.[7] Even the most liberal reading of Saunders' complaint and other filings offers no hint of specific, non-conclusory factual allegations in support of his equal protection claim. Rather, the half page of facts Saunders offers establishes only that the prison applies different security protocols to maximum and minimum security prisoners. Accordingly, the court will dismiss the claim pursuant to 28 U.S.C. § 1915(e).[8]

---

[7] To state an adequate claim for relief, the pleadings must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Grp., LLC v. City of N.Y., 130 S. Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

[8] The court notes that "[t]here is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption" In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)). "[P]risoner claims under the equal protection clause . . . must . . . be analyzed in light of the special security and management concerns in the prison system." Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001); see also id. at 654 (explaining, in the context of equal protection, that "our review of prison policies and actions is tempered by the recognition that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

## IV.

For the reasons stated, the court grants the defendants' motion for summary judgment on Saunders' deliberate indifference claim and dismisses Saunders' equal protection claim. The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the parties.

ENTER: This 29th day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE